# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| LATISHA MORGAN, | Case No. 1:09-cv-271 |
| Plaintiff, | Judge S. Arthur Spiegel |
| | Magistrate Judge Timothy S. Black |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and, therefore, not entitled to disability income benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 19-32) (ALJ's decision)).

## I.

On May 16, 2003, Plaintiff filed an application for DIB, alleging a disability onset date of February 1, 1997, due to borderline intellectual functioning, post-traumatic stress disorder, adjustment disorder, and thrombocytopenic purpura, avascular necrosis of the bilateral hips. (Tr. 24, 81). Plaintiff also applied for Supplemental Security Income

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

("SSI") on October 25, 2004, alleging a disability onset date of March 4, 1997. (Tr. 396).

The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. Plaintiff then timely requested a hearing before an ALJ. (Tr. 51-53, 59, 399, 403). A hearing was held on September 12, 2007, at which Plaintiff appeared with counsel and testified. (Tr. 411-56). A vocational expert was also present and testified. (Tr. 447-56).

On September 24, 2007, the ALJ issued a partially favorable decision finding that Plaintiff was disabled beginning February 1, 1997, and ending on July 31, 2004.[2] (Tr. 32). The ALJ found that beginning on July 31, 2004, Plaintiff was not disabled because she could perform a significant number of jobs despite the limitations caused by her impairments. (Tr. 31-32). On March 20, 2009, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 5).

At the time of the hearing, Plaintiff was a 31-year-old female with a high school education. (Tr. 31). She had past relevant work experience as a short order cook in a nursing home, last working in 1996. (Tr. 96).

---

[2] Plaintiff previously filed applications for DIB and SSI in March 1997 and was found disabled. (Tr. 38). She received payments until July 2003, when they were suspended because she was a fugitive felon. (Tr. 20). The suspension continued in November 2003 after Plaintiff was incarcerated. (*Id.*) After twelve months of continuous suspension, Plaintiff's benefits were terminated, effective July 2004. (*Id.*)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the Title II disability insured status requirements of the Social Security Act on the alleged onset date of February 1, 1997.

2. The claimant has not engaged in substantial gainful activity since February 1, 1997 (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. On February 1, 1997, the claimant's severe impairments were idiopathic thrombocytopenic purpura, avascular necrosis of the bilateral hips, adjustment disorder (depression) and borderline intellectual functioning. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant was disabled as of February 1, 1997 (and entitled to a period of disability and disability insurance benefits) based on collateral estoppel from Judge Kelly's favorable decision of September 15, 1998 on the Title XVI claim filed March 4, 1997 (20 CFR 404.950(f)).

5. Medical improvement occurred as of July 31, 2004 (20 CFR 404.1594(b)(1)).

6. Since July 31, 2004, the claimant's impairments have been: a history of idiopathic thrombocytopenic purpura (in remission); s/p bilateral total hip replacements (in 1999 for avascular necrosis); depression, borderline intellectual functioning, posttraumatic stress disorder (first diagnosed in 2004), and substance abuse (crack cocaine and opiates).

7. Whether considered individually or in combination, the claimant's impairments have never been shown to meet or medically equal the requirements of any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.1520(d)).

8. From July 31, 2004 to the present, the claimant has had the following residual functional capacity: Physically, she can lift/carry and push/pull up to 20 lbs. occasionally, 10 lbs. frequently; in a normal eight-hour workday, she can stand and/or walk a total of two hours; she can only occasionally

-3-

stoop, kneel, crouch, and climb ramps or stairs; she should never crawl, climb ladders, ropes, or scaffolds, perform work requiring the forceful use of the lower extremities, work at unprotected heights, or work around hazardous machinery. Mentally, the claimant is able to perform only simple, routine, repetitive tasks; she can understand, remember and carry out only short and simple instructions; she cannot interact with the general public and cannot interact with coworkers or supervisors more than occasionally. The claimant is able to make only simple work-related decisions. The job should not require more than ordinary and routine changes in work setting or duties and should not require more than simple reading, writing, or math.

9. The claimant's medical improvement as of July 31, 2004 was related to the ability to work because it has resulted in an increase in her residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

10. The claimant is unable to perform her past relevant work (20 CFR 404.1565 and 416.965).

11. Born December 16, 1975, the claimant is currently 31 years old and a "younger individual age 18-44" (20 CFR 404.1563 and 416.963).

12. The claimant has a high school equivalency education (GED) and is literate and able to communicate in English. (20 CFR 404.1564 and 416.964).

13. There are no acquired work skills transferable to jobs within the claimant's residual functional capacity.

14. From July 31, 2004 to the present, considering the claimant's age, education, work experience, and residual functional capacity, there are a significant number of jobs in the national economy she can perform. (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

15. The claimant's disability for the purpose of entitlement to Title II disability benefits ended July 31, 2004 (20 CFR 404.1594(f)(8)).

16. The claimant has not been under a disability, as defined in the Social Security Act, at any time from July 31, 2004 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-32).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI benefits. (Tr. 32).

On appeal, Plaintiff argues that the ALJ erred in finding medical improvement. The undersigned agrees.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

For her only assignment of error, Plaintiff maintains that the ALJ erred in finding medical improvement.

The record medical history reflects that:

On October 2, 1997, Dr. Salah Samy, a psychiatrist, evaluated Plaintiff and diagnosed an adjustment disorder and borderline intellectual functioning. He assigned a GAF of 55 and opined that Plaintiff could not communicate with co-workers or supervisors and would not be able to handle the ordinary stress and work pressures of a job. Dr. Samy opined that Plaintiff would not be able to handle a job effectively. (F14).

In 2003, Plaintiff was incarcerated in the Ohio Reformatory for Women. (Tr. 414). Plaintiff underwent an initial mental health screening in November 2003, and it was noted that Plaintiff had no history of outpatient mental health treatment and was currently taking no psychotropic medications. (Tr. 188). Upon transfer to the Franklin Pre-Release Center in May 2004, it was noted that Plaintiff took prescribed psychotropic medications (Tr. 169); however, throughout her incarceration, her medical records mainly dealt with her physical complaints (Tr. 133-92).

On September 6, 2004, Plaintiff was referred for a suicide consultation after

reportedly "talking to someone who wasn't there." (Tr. 146). The psychiatric supervisor concluded that Plaintiff "was not hallucinating and did not pose a risk of self-injuring behavior." (*Id*.) He noted that Plaintiff had made no threat or attempt and rated his assessment of lethality as low. (*Id.*) The psychiatric supervisor further noted that Plaintiff was possibly malingering. (*Id*.) A Department of Rehabilitation and Correction release medical summary, dated October 22, 2004, noted that Plaintiff was receiving psychiatric treatment and medication. (Tr. 134).

Dr. Jonathan Stoudmire treated Plaintiff at Forensic Mental Health Services from November 4, 2004 through April 22, 2005. (Tr. 194-212). He diagnosed posttraumatic stress disorder and major depressive disorder and assigned a GAF of 55. (Tr. 198). Dr. Stoudmire noted that Plaintiff had visual and auditory hallucinations, poor sleep, decreased appetite, anhedonia,[3] and hypervigilence. (*Id*). Plaintiff noted that she is depressed everyday, and it gets worse throughout the course of the day. (Tr. 205).

In December 2004, Plaintiff told Sharen Orso, MSN, that she was very satisfied with the Geodon and requested to be placed back on Remeron, which she reported taking with good results while she was in prison. (Tr. 197).

In February 2005, Plaintiff reported that she ran out of medications several weeks prior, and admitted to a relapse with crack cocaine three days prior, after being clean for

---

[3] Anhedonia is the loss of the capacity to experience pleasure, including an inability to gain pleasure from normally pleasurable experiences. Anhedonia is a core clinical feature of depression, schizophrenia, and some other mental illnesses.

over a year.[4] (Tr. 196). Dr. Stoudmire recommended continuing current medications and attending an anger management group. (*Id.*)

In March 2005, Plaintiff reported that she was doing better and that her mood had been stable. (Tr. 195). She denied further drug use and said that she was enrolled in a job training program. (*Id.*) Other than mild paranoia, and fair insight and judgment, Dr. Stoudmire reported normal mental health findings. (*Id.*) He noted that Plaintiff had euthymic mood, affect with full range, well-organized thoughts, no suicidal or homicidal ideation, and no delusions. (*Id.*) At an April 2005 follow-up, Plaintiff reported being released from her job training program after threatening another student. (Tr. 194). Dr. Stoudmire noted that Plaintiff was scheduled to start another program to train to use heavy machinery. (*Id.*) Dr. Stoudmire's examination findings were essentially unchanged, but he increased Plaintiff's Geodon dosage to better stabilize her mood. (*Id.*)

In August 2005, Todd Finnerty, Psy.D., a state agency psychological consultant, opined that Plaintiff was mildly restricted in her activities of daily living and in maintaining concentration, persistence, or pace; and moderately limited in her ability to maintain social functioning. (Tr. 250). Dr. Finnerty opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, but had no other significant limitations in understanding and memory. (Tr. 254). He opined that Plaintiff

---

[4] On January 2, 2005, Plaintiff was admitted to the hospital for treatment of a dislocated hip, and she reported using crack cocaine almost every day, and having been on a crack cocaine binge for the past five days. (Tr. 279, 281, 287).

had moderate limits in her ability to carry out detailed instructions and complete a normal workday, but otherwise was not significantly limited in sustaining concentration and persistence. (Tr. 254-55). Dr. Finnerty opined that Plaintiff was moderately limited in her ability to interact appropriately with coworkers, supervisors, and the general public, but had no significant limitations in adapting to work changes. (Tr. 255).

On July 29, 2007, Plaintiff was admitted to Fort Hamilton Hospital for suicidal ideation. (Tr. 351-59). At admission, she admitted to intermittent auditory hallucinations, sometimes command in type. (Tr. 358). She was prescribed Risperdal. Dr. Silvia Colmenares diagnosed schizoaffective disorder bipolar type, chronic posttraumatic stress disorder, and assigned a GAF of 30[5] on admission and 35[6] on discharge. (Tr. 351).

Plaintiff testified at the hearing that she has a very hard time dealing with other people and authority from supervisors. (Tr. 425). Plaintiff testified later in the hearing that "I don't like people, plain, period." (Tr. 429). She also testified that she has trouble concentrating and that her mind wonders a lot. (Tr. 430). She further testified that she hears "voices and all kinds of noises and on occasions I do see things that's not there."

---

[5] A GAF of 21-30 reflects behavior that is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (*e.g.*, stays in bed all day, no job, home, or friends).

[6] A GAF of 31-40 reflects some impairment in reality testing or communication (*e.g.*, speech is at time illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

(Tr. 432).

In his decision dated September 24, 2007, the ALJ found that the Plaintiff was disabled as of February 1, 1997, based on collateral estoppel from the ALJ's favorable decision of September 15, 1998. (Tr. 20). However, the ALJ found that medical improvement occurred as of July 31, 2004, and thus benefits ceased. (Tr. 25).

Under 42 U.S.C. §423 (f)(1), the Commissioner may not find a disabled person to be no longer under a "disability" unless such a finding is supported by "substantial evidence which demonstrates that (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work); and (B) the individual is now able to engage in substantial gainful activity." SSA regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. §404.1594 (b)(1).

In determining whether a recipient's entitlement to disability benefits has ended, the Commissioner uses an eight-step sequential evaluation process. *See*, 20 C.F.R. § 404.1594(f)(1)-(8); *see also, Johnson v. Sec'y of Health & Human Servs.*, 948 F.2d 989, 991 (6th Cir. 1991). That the claimant currently not be engaged in "substantial gainful activity," is the first step in the sequential evaluation process for determining that disability has ended. *Id*. The other steps can be summarized as follows: (2) If not engaged in substantial gainful employment, does the recipient have an impairment which

-10-

would result in a new finding of disability? (If yes, the disability is found to be continuing); (3) If no, has there been medical improvement in the condition which was originally found to be disabling? (If no, the disability is usually found to continue); (4) If there has been medical improvement, is it related to the ability of the recipient to do work? (If no, disability is probably found to be continuing, subject to step 5); (5) This step contains the exceptions to continuing disability even when no medical improvement is found in step 3 or the improvement is not related to ability to do work in step 4; (6) If medical improvement is shown, is the recipient's current impairment nonetheless severe? (If no, disability ceases); (7) If the current impairment is severe, can the recipient do the work which he did before determined to be disabled? (If yes, the disability ceases); (8) If the recipient cannot do the work done in the past, can the recipient do other work?

Medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 CFR §404.1594 (c)(1). In 1997, when Plaintiff was first awarded benefits, Dr. Samy diagnosed an adjustment disorder and borderline intellectual functioning and assigned a GAF of 55. The Commissioner indicates that medical improvement occurred on July 31, 2004. However, the medical evidence from July 31, 2004 through July 29, 2007 (the date of the most recent medical records) fails to evidence improvement. The only available medical evidence since July 31, 2004 are: (1) physical exams from Dr. Stoudmire, who noted that Plaintiff had a GAF of 55 and visual and auditory hallucinations (Tr. 198), improved

mood in March 2005, but release from a job training program in April 2005 for threatening another student (Tr. 194); (2) an August 2005 opinion of Dr. Finnerty, a state agency psychologist, who saw Plaintiff on only one occasion and opined that Plaintiff had moderate limitations (Tr. 250-55); and (3) July 29, 2007 records, from when Plaintiff was admitted to Fort Hamilton Hospital for suicidal ideation, at which time she was diagnosed with schizoaffective disorder and assigned a GAF of 35 upon discharge, indicating major impairments in multiple areas.

Reliance on these limited records to support a finding of medical improvement is improper. In fact, the ALJ's recognition that there was little information regarding Plaintiff's mental health is dispositive, since the burden is on the administration to show substantial evidence supporting its decision of medical improvement. Moreover, Plaintiff's most recent medical records and GAF finding indicate even worse functional abilities than those possessed at the time of the initial determination in 1998. Therefore, it is clear from the record that Plaintiff met and has continued to meet the medical requirements for disability based on her mental impairments.

While the Plaintiff bears the ultimate burden of proving he or she is under a disability, it is the administration's responsibility to satisfy the burden of proof in termination proceedings. *Nierzwick v. Comm'n of Soc. Sec.*, 7 Fed. Appx. 358, 361 (6th Cir. 2001) (quoting *Griego v. Sullivan*, 940 F.2d 944 (5th Cir. 1991). The Commissioner has failed to meet this burden. The only evidence that exists on the issue of Plaintiff's mental health supports her claim for disability, *i.e.*, Dr. Stoudmire's records from

Forensic and Mental Health Services (Tr. 198-212) and the hospitalization at Ft. Hamilton Hughes in July 2007 (Tr. 351-59). Accordingly, the ALJ erred in finding medical improvement.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's assertions of disability, the

extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's psychiatrists, proof of disability is overwhelming; moreover, there is an absence of evidence supporting a finding of medical improvement.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to disability insurance benefits and supplemental security income beginning on October 23, 2004,[7] be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date: March 29, 2010                                s/ Timothy S. Black
                                                    Timothy S. Black
                                                    United States Magistrate Judge

---

[7] Plaintiff previously received benefits from February 1, 1997 until June 2003. (Doc. 32). Therefore, although Plaintiff alleges that her disability onset date was February 1, 1997, she was receiving benefits at that time. Additionally, it appears that she was incarcerated from November 2003 through October 22, 2004. Therefore, the undersigned finds that her benefits should have resumed on October 23, 2004. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972) (the suspension of benefits during a period of incarceration does not violate due process).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LATISHA MORGAN, | : | Case No. 1:09-cv-271 |
| | : | |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 DAYS** after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).